Filed 6/21/24  C.N. v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| C.N., | |
| Petitioner, | E083554 |
| v. | (Super.Ct.Nos. J287854 & J287855) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | |
| Respondent; | OPINION |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Annemarie G. Pace, Judge.  Petition denied.

Valerie Ross for Petitioner.

No appearance for Respondent.

Tom Bunton, County Counsel, and Pamela J. Walls, Deputy County Counsel, for Real Party in Interest.

1

<u>INTRODUCTION</u>

Petitioner C.N. (mother) filed a petition for extraordinary writ pursuant to California Rules of Court, rule 8.452, challenging the juvenile court's order terminating reunification services as to her children, S.N. and A.C. (the children), and setting a Welfare and Institutions Code[1] section 366.26 hearing. She contends the San Bernardino County Children and Family Services (CFS) did not provide her with reasonable services. She requests a temporary stay of the section 366.26 hearing, pending the granting or denial of the writ petition. We deny the request for a stay and also deny the writ petition.

<u>PROCEDURAL BACKGROUND</u>

On January 20, 2021, CFS filed section 300 petitions on behalf of the children, alleging they came within the provisions of subdivision (b) (failure to protect). At that time, S.N. was two months old and A.C. was 22 months old. Both petitions alleged that mother had a substance abuse problem that impacted her ability to provide adequate care and protection to her children, that she had an unstable and unsafe lifestyle, and that she left A.C. alone in a hotel room and he was found wandering in the parking lot, unsupervised.[2]

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

[2] A.C.'s petition also included allegations concerning his father, D.C., under section 300, subdivisions (b) and (g) (no provision for support). Since D.C. is not a party to this writ, this opinion will not discuss those allegations.

2

The social worker filed a detention report recommending that A.C. be detained from mother's care and maintained in foster care, and that S.N. be detained from her care and maintained in the care of his alleged father, L.S. The social worker reported that CFS received a referral on January 18, 2021, alleging caretaker absence and general neglect. Mother and A.C. were staying in a hotel with another adult and her child, L.B. A.C. and L.B. were found outside the hotel room, walking around the parking lot, unsupervised. They appeared to be dirty and dehydrated. The police were called to the scene, and they found that mother's hotel room had a mini refrigerator that contained marijuana and alcohol, which was accessible to A.C. and L.B. Mother was reportedly last seen leaving the room on January 17, 2021, with two males, and she returned under the influence of alcohol. It was unknown how long A.C. and L.B. were left alone in the hotel room. They were taken to the hospital, where A.C. was observed to look exhausted, have red eyes, and have a "very red" diaper rash.

The social worker spoke with the police officer, who informed mother that A.C. was taken into custody by CFS because no parent was present with him at the hotel. Mother told the officer she had put A.C. down for a nap and went to the store to get food. She was intoxicated and said she bought alcohol at the store. Mother said she had another child, S.N., who was currently visiting his father, L.S. Mother later reported that A.C.'s father, D.C., was currently homeless, and his whereabouts were unknown.

3

The court held a detention hearing on January 21, 2021, and detained A.C. from mother and his father, D.C. The court detained S.N. from mother and maintained him with his father, L.S.

On February 4, 2021, CFS filed an amended petition as to S.N., which added allegations under section 300, subdivisions (b) and (g) (no provision for support) that L.S. was unable to provide care and support for S.N. It also added an allegation under subdivision (j) (abuse of sibling). The court held a detention hearing the following day and detained S.N. from both mother and L.S. and placed him in foster care.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on February 8, 2021, recommending that the court sustain the petitions, finding some allegations true but others not true, and that mother be provided with reunification services. The social worker noted that although mother had some beer on the day of the incident, she did not have a criminal history regarding substance abuse, she denied having a substance abuse problem, and she tested negative for all substances. The social worker recommended a case plan for mother, which required her to participate in counseling/mental health services, complete a parenting education program, and submit to random substance abuse testing.

The court held a jurisdiction/disposition hearing on February 11, 2021. As to A.C.'s petition, the court sustained the section 300, subdivision (b) allegation that mother had a substance abuse issue (alcohol) and left A.C. in a hotel room by himself while she

4

was under the influence. As to S.N.'s petition, the court found true the same allegation and sustained the petition, finding that S.N. came within section 300, subdivisions (b) and (g). The court found that L.S. was an alleged father to S.N., not entitled to services, and that A.C.'s father was a presumed father. The court declared the children dependents, removed them from their parents, and ordered reunification services for mother and A.C.'s father. The court approved the case plan and ordered mother to participate in an outpatient program.

*Six-month Status Review*

The social worker filed a six-month status review report on August 4, 2021, recommending that services be continued. The social worker reported that mother was engaged in her services and making significant progress. She had completed eight sessions of individual counseling and 12 sessions of her parenting program. She submitted to random drug testing and had not had any positive results; however, she did have several no shows. Mother was consistently visiting the children. The social worker noted that the children were currently placed together and doing well.

The court held a six-month review hearing on August 11, 2021. It terminated services as to A.C.'s father, but continued mother's services. It also ordered unsupervised visits for mother after five consecutive clean tests.

*Twelve-month Status Review*

The social worker filed a 12-month status review report on March 1, 2022, recommending that mother's services be continued. Mother completed a substance abuse

5

treatment program and had submitted to random testing, with no positive results or no shows this reporting period. Mother reported that she was approved for unsupervised visits in October or November, and she had visits on Saturdays and Sundays for three hours each. She requested overnight and weekend visits and said she would be the sole person providing care for the children. She also reported she was currently pregnant and was due in September.

On March 4, 2022, the social worker filed an Additional Information to the Court report (CFS 6.7 report), recommending a continuance due to new information received. The current caregiver reported concerns about mother's ability to care for the children. Mother had contacted the caregiver during unsupervised visits to ask how to handle the children when one child was having tantrums and not following directives. The caregiver was further concerned because mother would return one child from visits soiled, despite having extra clothes. CFS was also informed that mother had an Inland Regional Center (IRC) support worker. The social worker recommended returning to supervised visits to ensure mother was able to appropriately care for the children.

The court held a 12-month hearing on March 7, 2022. It was concerned that no one knew mother had an IRC support worker, which indicated mother had a diagnosis she was unaware of, or had failed to disclose, that could impact her ability to take care of the children. The court reverted the visits back to being supervised and ordered CFS to assess mother's living situation and find out about her ICR issues. It then continued the hearing to April 7, 2022.

6

On April 6, 2022, the social worker filed another CFS 6.7 report and reported that she spoke with mother's IRC support worker and found out mother had been in the program since May 2020. The support worker was with her for 38 hours a week. The IRC support worker appeared to be concerned about mother caring for two toddlers during visits, as she reported that mother had to be reminded that she had two children to care for during the visits. The social worker further reported that mother worked full time. When asked who she would leave the children with for daycare, mother said her roommate; however, the IRC support worker said mother's roommate was also a client of IRC and was not able to care for the children.

The court held a further 12-month review hearing on April 7, 2022, and mother's counsel acknowledged the concerns that mother had an IRC support worker and occasionally needed redirection; however, she pointed out that mother had completed her case plan, tested consistently and negatively, and attended all visits. Mother had also located a nearby daycare. Thus, counsel asked for unsupervised visits. The court ordered visits to be supervised, with authority for unsupervised visits, and it ordered CFS to work with IRC to "explore expanding Mom's visits."

*Eighteen-month Status Review*

On July 11, 2022, the social worker filed an 18-month status review report, recommending that the children remain in their concurrent planning home while mother continued to receive services. The social worker noted that although mother had completed a parenting education program and counseling, she was requesting additional

7

parenting classes and therapy, and CFS would refer her to those services. The social worker further recommended transitioning mother to unsupervised visits so she could demonstrate that she had benefitted from her services. The social worker reported that the current plan was placement in foster care with a permanent plan of returning home. The social worker recommended providing mother with services under the permanent plan, for a period not to exceed six months.

The court held an 18-month review hearing on July 19, 2022. The court found that reasonable services had been provided to mother, that mother failed to make substantive progress in her case plan, and that return to mother at the current time would be detrimental to the children. The court ordered the plan of placement in foster care with a permanent plan to return home. It ordered reunification services to be terminated, and ordered services to be provided under the permanency planning program. The court ordered unsupervised visits with mother with a support person present, and "overnights, weekends, and return by standing order." The court also ordered CFS to have a psychological evaluation done, or for CFS to obtain mother's IRC evaluation, so it could understand what assistance she needed. Mother's counsel placed an objection to the termination of mother's statutory services. The court continued the matter for a Permanent Plan Review (PPR) on January 19, 2023.

*Section 366.3 PPR Status Reviews*

On January 17, 2023, the social worker filed a status review report. The social worker reported that on December 27, 2022, mother stated she wanted the children back.

8

The social worker reported that she met with mother's IRC service provider on January 11, 2023. He said mother was receiving 102 hours per month of services, such as transportation, cleaning, and laundry, and that an IRC support worker was present for mother's visits with the children. On January 12, 2023, the social worker assessed mother's needs and identified needs in the areas of parenting practices, her social support system, and her cognitive/developmental abilities. The social worker recommended that services be terminated and the plan of foster care with the permanent plan of adoption be implemented.

The court held a PPR hearing on January 19, 2023, and county counsel asserted that CFS was asking to terminate mother's non-statutory services. Mother's counsel said she would call the IRC director to get mother's IRC evaluation. The matter was continued to February 7, 2023.

The social worker filed a CFS 6.7 report on February 6, 2023, reporting that mother was given a referral and was scheduled for a psychological evaluation on February 6, 2023. The social worker attached a copy of mother's IRC individual program plan dated February 9, 2022, which reflected that mother had a mild intellectual disability and that she could take care of herself independently, communicate effectively, and had no psychological or psychiatric issues.

The court held a contested PPR on February 7, 2023, and noted that mother had a psychological evaluation the previous day and it needed to get that report. The court continued the matter to March 20, 2023.

9

On March 17, 2023, the social worker filed a CFS 6.7 report, reporting that she spoke with one of mother's IRC support workers who stated that mother interacted well with the children. The social worker also attached a copy of the psychological evaluation done on February 6, 2023. Mother was given a Personality Assessment Inventory (PAI), and the psychologist observed that she "presents with certain patterns . . . that are unusual . . . in clinical populations but relatively common among individuals feigning mental disorder." He observed that mother's PAI profile did not "indicate the presence of clinical psychopathology." The psychologist recommended that mother participate in individual therapy, family therapy, life skills classes or job skills training, and GED study courses.

The court held a further contested PPR hearing on March 20, 2023, and CFS recommended unsupervised visits once a week for eight hours. The court followed the recommendation. It also ordered mother's services to be terminated and the permanent plan to be adoption.

The social worker then filed another PPR report on September 18, 2023, recommending a permanent plan of return home to mother and noting that mother had completed a parenting education program, individual therapy, and a psychological assessment.

The court held a PPR hearing on September 20, 2023. The court ordered, and the parties agreed to, overnight visits from Friday to Sunday and an appearance review in 30

10

days to see about further liberalization. The court ordered a hearing for October 18, 2023.

*Section 388 Petition and Further Status Review*

On October 3, 2023, mother filed a section 388 petition, making the "unusual request to change orders" since she was now seeking "a different goal" than having the children returned to her. The petition stated that the visits had not been going well, noting that during one visit, A.C. was out of control and hitting, kicking, and biting mother. He also threw things at her, and she was concerned for her baby. Mother ended up returning the children to the foster parent and ending that visit early. Mother realized the children needed more help than she could provide.

The social worker interviewed mother and recommended that the court grant the section 388 petition. Mother stated that at her overnight visit on September 29, 2023, A.C. hit her and spit on her, and she said he would hit his siblings at every visit. Mother said she was unable to care for the children, that she had no support system, and that she was scared of A.C. The social worker spoke with another social worker who conveyed that mother contacted the caregiver crying and saying the caregiver needed to pick the children up from the visit; mother also said she did not want them anymore.

The court held a hearing on October 17, 2023, and noted that mother's counsel filed an "interesting" section 388 petition that asked for visits to return to being supervised. The court granted the petition and ordered supervised visitation. It then vacated the October 18, 2023 PPR hearing and set it for March 20, 2024.

11

The social worker filed a status review report on March 11, 2024, and recommended that the court set a section 366.26 hearing and consider terminating parental rights at that hearing, and that the permanent plan of adoption or legal guardianship be implemented. The social worker spoke with mother and asked if she wanted to reunify with the children, and mother said she no longer wanted to, due to their aggressive behavior. The social worker noted that mother became easily frustrated at visits and had a difficult time managing the children's behavior.

The court held a PPR hearing on March 20, 2024. Mother's counsel argued that the children were removed from mother in the beginning without behavioral problems, and they were returned to her with behavioral problems. She contended that in providing services, CFS did not adequately address the "unique circumstances of this case" and that CFS should have addressed such issues as the return of the children with behavioral issues, the fact that mother had a new baby in her home, and "the fact that mother is special needs." Counsel added that mother informed the court that she could "no longer handle the boys," and she was afraid that her baby girl would suffer physically as a result of their aggressive behavior. Mother's counsel objected to setting a section 366.26 hearing, since mother "reluctantly" said she was giving up the children and later told the social worker she did not want to give them up permanently. Counsel thus requested to "go back to the drawing board" and see what might help mother. The children's counsel acknowledged that the children had behavioral issues, but noted that A.C. was already showing anger issues when he was removed from mother, and that S.N. had been

12

diagnosed with developmental delays and was currently being assessed for autism. The children's counsel argued it was not a reasonable services issue for mother to identify her inability to parent the children, tell CFS she did not want them anymore, and then claim CFS should have tailored a case plan "to her changing desires" about whether she wanted them or not.

The court remarked that mother had received extensive services in this case, and "we can't just spend years and years trying to reunify" since the goal was to provide the children with permanency. The court stated it had become clear that mother could not parent these children. It asserted it did not find that services had been unreasonable at all, but that they were appropriate. It then set a section 366.26 hearing for July 18, 2024.

## DISCUSSION

### The Court Properly Found That Mother Was Provided with Reasonable Services and Set a Section 366.26 Hearing

Mother argues the court erred in setting a section 366.26 hearing, since she was not provided with reasonable services. She specifically claims that CFS failed to "identify the problem" and provide services "directed at addressing [her] handling the children on her own." We conclude that mother was provided with reasonable services. Therefore, the court properly set a section 366.26 hearing.

At the outset, we address CFS's claim that mother forfeited her claim by failing to challenge the reasonableness of her reunification services when they were terminated at the 18-month hearing on July 19, 2022. In dependency litigation, nonjurisdictional issues

13

must be the subject of objection or appropriate motions in the juvenile court; otherwise, those arguments have been waived or forfeited and may not be raised for the first time on appeal. (*In re Christopher B.* (1996) 43 Cal.App.4th 551, 558.) Here, mother's counsel did "place an objection to the termination of Mom's statutory services" at the 18-month review hearing on July 19, 2022. However, counsel did not object to the adequacy or reasonableness of the services provided, thereby giving the juvenile court no reason to evaluate the reasonableness of the services offered; thus, mother has forfeited her claim. Notwithstanding the forfeiture, substantial evidence supports the court's finding that mother was provided with reasonable services.

A. *Standard of Review*

"On appeal, it is our task to determine whether the record discloses substantial evidence which supports the juvenile court's finding that reasonable services designed to aid the parent in overcoming the problems which led to loss of custody were provided or offered." (*In re Joanna Y.* (1992) 8 Cal.App.4th 433, 439 (*Joanna Y.*).) "In reviewing the reasonableness of the services provided, this court must view the evidence in a light most favorable to the respondent. We must indulge in all legitimate and reasonable inferences to uphold the verdict. If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545 (*Misako R.*).)

B. *There Was Substantial Evidence to Support the Court's Finding of Reasonable Services*

14

We have reviewed the record and find mother's argument unavailing. The record reveals that she was offered reasonable services, including counseling/mental health services, a parenting education program, random substance abuse testing, and an outpatient substance abuse program. Moreover, the record reflects that she participated in those services and completed a parenting program, individual counseling, a substance abuse treatment program, and submitted to random testing. Further, although mother completed those services, she requested additional parenting classes and therapy at the time of the 18-month review, and CFS agreed to refer her to those services. In addition, CFS facilitated visitation throughout the case, and mother had consistent visitation with the children and the visits progressed from supervised to unsupervised at her request.

Mother specifically claims that CFS failed to "identify the problem" and provide services "directed at addressing [her] handling the children on her own." To the extent she is arguing that "the problem" was the trouble she was having "handling the children on her own," her claim has no merit. "The agency supervising the children must identify the problems *leading to the loss of custody*, [and] offer services designed to remedy these problems . . . ." (*Joanna Y.*, *supra*, 8 Cal.App.4th at p. 438, italics added.) Here, the children were removed from mother as a result of her choosing to leave A.C. unsupervised in a hotel room with beer and marijuana accessible, and he was found wandering in a parking lot. As discussed, mother was provided with individual counseling and a parenting education class to help her improve her parenting skills. In addition, even after her statutory reunification services were terminated, she was given

15

non-statutory services to further aid her, as well as a psychological assessment to help determine what assistance she needed. Further, representatives of the IRC assisted mother throughout the time that services were provided. We recognize that the children had behavioral issues that made them difficult to manage. However, the trouble mother was having with the children was not a reasonable services issue.[3] Mother simply was unable to safely care for the children after having had 18 months of statutory services and approximately six months of additional discretionary services. That the services were reasonable was clearly manifested by mother's consistent progress until the time she voluntarily acknowledged that she could not safely care for the children.

Ultimately, we must construe all reasonable inferences in favor of the juvenile court's findings regarding the reasonableness of CFS's efforts. (*Misako R.*, *supra*, 2 Cal.App.4th at p. 545.) In doing so, we conclude that mother was provided with extensive services, and the services provided were reasonable under the circumstances. (*Id*. at p. 547.) Therefore, there is no basis to conclude the court erred in terminating her services and setting a section 366.26 hearing.

---

[3] We note mother mentions that "[n]o new or additional assistance was offered or provided" after CFS learned she was a client of IRC. However, it is unclear what other assistance she should have received, especially since she was already receiving help from IRC.

16

## DISPOSITION

The writ petition is denied.  The request for a temporary stay of the section 366.26

hearing is also denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


FIELDS
J.


We concur:

McKINSTER
Acting P. J.

RAPHAEL
J.


17